ELLISTON P. MORRIS

*v.*

THE SEA GIRT LAND IMPROVEMENT COMPANY.

The defendants sold certain lots to complainant and others, adjoining a park of about twenty acres, laid out and dedicated by them, the deeds thereof conferring on the lot-owners " the free use and enjoyment of the park in common with other lots at Sea Girt, and a passageway therein for foot passengers only, forever; " afterwards the complainant was, by deed, given " the full right and privilege to have and use a carriageway  *  *  *  to and from the rear of his lots  *  *  *  into and through the park." The complainant has built upon and graded and improved his lots.—*Held*, that, on his application, the defendants should be perpetually enjoined from opening a highway across the park and from destroying the trees and shrubbery therein, and from laying it out into building lots and selling them.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. P. L. Voorhees*, for complainant.

*Mr. A. G. Richey*, for defendant.

NOTE.—Where a dedication of a park is made by a town or city, it enures to the benefit of all who are at the time or may afterwards become citizens thereof. It cannot be revoked by the city, and any attempt to revoke it, as by a sale of the land, may be enjoined by an adjoining lot-owner, *Macon* v. *Frank-lin*, *12 Ga. 239; Pomeroy* v. *Mills, 3 Vt. 279; State* v. *Woodward, 23 Vt. 92; Hoadley* v. *San Francisco, 50 Cal. 265; Baton Rouge* v. *Bird, 21 La. Ann. 244;* see *McChesney* v. *People, 99 Ill. 216; Spring Garden* v. *Northern Liberties, 1 Whart. 25; Mowry* v. *Providence, 10 R. I. 52; Atty.-Gen.* v. *Goderich, 5 Grant's Ch. 402;* nor can such corporation use the park for any purpose, although such purpose be public, inconsistent with the original dedication, *Atty.-Gen.* v. *Southampton, 1 Giff. 363; Com.* v. *Alburger, 1 Whart. 469; Wellington* v. *Petitioners, 16 Pick. 87; Harris* v. *Taylor, 58 Tex. 690; Dummer* v. *Jersey City, Spen. 86; Lebanon* v. *Comrs., 9 Ohio 80;* see *Campbell Co.* v. *Newport, 12 B. Mon. 538; Lamar Co.* v. *Clements, 49 Tex. 347; State* v. *Trask, 6 Vt. 355; Huber* v. *Gazley, 18 Ohio 18; Riggs* v. *Detroit, 27 Mich. 262; State* v. *Atkinson, 24 Vt. 448; Daniels* v. *Wilson, 27 Wis. 492; Reid* v. *Edina, 73 Mo. 295; Williams* v. *First Presb. Soc., 1 Ohio St. 478; Simplot* v. *Dubuque, 49 Iowa 630;* nor can such park be sold under execution against the town, *President &c.* v.

Morris v. Sea Girt Land Improvement Co.

THE CHANCELLOR.

The bill is filed to restrain the defendant, the complainant's grantor, from opening any streets or avenues through what is known as Crescent Park (a plot of about twenty acres, dedicated by the defendant to public use for a park) at Sea Girt, or using the park or any part thereof as a public highway; and from cutting and removing any timber, trees or shrubs growing or being in or upon that park, and from in any way destroying, defacing, marring or impairing the park or any part of it, and from using it or any part of it for any purpose inconsistent with its use as a park or pleasure-ground. No question is made either as to the dedication of the park or the use to which it was dedicated, but the complainant's statements on that subject in his bill are admitted to be true. The bill was filed by Hibberd Yarnall and the complainant, Elliston P. Morris, as owners of different lots adjoining the park. Mr. Yarnall died, and it was ordered that the suit proceed in the name of Mr. Morris. In 1875, the defendant conveyed to the latter two lots of land at Sea Girt, each fifty feet front on the street or avenue then called Atlantic Boulevard (then of the width of one hundred and fifty feet) by two hundred feet in depth to the before-mentioned park. By the

*Indianapolis, 12 Ind. 620; Plaquemines v. Foulhouze, 30 La. Ann. 64; McKnight v. Grant, Id. 361; Ransom v. Boal, 29 Iowa 68; Alton v. Ill. Trans. Co., 12 Ill. 38.*

It may be enclosed by the public authorities, *Langley v. Gallipolis, 2 Ohio St. 107.* See *Hutchinson v. Pratt, 11 Vt. 402.*

Where lands are dedicated by an individual, as a public square or park, a land-owner, whose premises front thereon, may enjoin the use of it for a different purpose, as erecting private buildings thereon, *Brown v. Manning, 6 Ohio 129; Fisher v. Beard, 32 Iowa 346, 40 Iowa 625; Watertown v. Cowen, 4 Paige 510; Tulk v. Moxhay, 11 Beav. 571; Cady v. Conger, 19 N. Y. 256; Oswald v. Grenet, 22 Tex. 94; Lamar Co. v. Clements, 49 Tex. 347; Huber v. Gazley, 18 Ohio 18; Hills v. Miller, 3 Paige 254; Carter v. Portland, 4 Oreg. 339;* or public buildings, *Princeville v. Auten, 77 Ill. 325; Comrs. v. Lathrop, 9 Kan. 453;* see *Com. v. Bowman, 3 Pa. St. 202; Baird v. Rice, 63 Pa. St. 489; Westfall v. Hunt, 8 Ind. 174;* or continuing buildings illegally erected thereon, *Rankin v. Huskisson, 4 Sim. 13;* or the officers of the town may remove such buildings, *Rung v. Shoneberger, 2 Watts 23;* or enjoin their erection, *Com. v. Rush, 14 Pa. St. 186;* or maintain case therefor, *Abbott v. Mills, 3 Vt. 521.*

deed, the right is given to the "free use and enjoyment of the park
in common with other lots at Sea Girt, and to a passageway
therein for foot passengers only, forever." Mr. Morris built an
expensive house upon his lots, and has expended a considerable
sum of money in grading and improving them. After he had
built his house the defendant, with his consent, changed the plan
of laying out its property but not affecting the park. The altera-
tion involved the narrowing of Atlantic Boulevard (now called
Atlantic avenue) fifty feet, for the benefit of the defendant, so as to
render it less expensive to keep in repair. The fifty feet in front
of the complainant's lots were to be given to him, and among the
other considerations for his consent to the change was the provision
that he should have the right to a carriageway instead of a foot-
way into the park. The fifty feet were conveyed to him accord-
ingly by a deed from the defendant in 1879, by which there was
granted to him and his heirs and assigns forever, the "full right
and privilege to have and use a carriageway or a way on which
to drive and use carriages and vehicles, along and upon, to and
from the rear of his lots or either of them into and through the
park." The bill states that the defendant has resolved to destroy
the·park and lay it out in streets and avenues and building lots,

---

An adjacent lot-owner may enjoin the sale of a portion thereof for another
purpose, *Comrs.* v. *Lathrop,* 9 *Kan. 453 ; Rutherford* v. *Taylor,* 38 *Mo. 315 ;*
*Covington* v. *McNickle,* 18 *B. Mon. 262 ;* see *Chapman* v. *Gordon,* 29 *Ga. 250 ;*
*Boyce* v. *Kalbaugh,* 47 *Md. 334; Cass Co.* v. *Banks,* 47 *Mich. 467 ; Still* v. *Lan-*
*singburgh Trustees,* 16 *Barb. 107 ;* or a lease thereof to private individuals, *Le*
*Clerq* v. *Gallipolis,* 7 *Ohio 217 ; Warren* v. *Lyons City,* 22 *Iowa 351 ;* see *Hardy*
v. *Memphis,* 10 *Heisk. 127 ; Atty.-Gen.* v. *Brantford,* 6 *Grant's Ch. 592 ; Wade*
v. *Brantford,* 19 *U. C. Q. B. 207 ;* or maintain ejectment, *Augusta* v. *Perkins,*
3 *B. Mon. 437 ; Cincinnati* v. *White,* 6 *Pet. 431 ;* see *Hoboken Land Co.* v. *Hobo-*
*ken,* 7 *Vr. 540 ; Price* v. *Plainfield,* 11 *Vr. 608 ; Bayonne* v. *Ford,* 14 *Vr. 292 ;*
*Bayard* v. *Hargrove,* 45 *Ga. 342 ;* or prevent the running of a street·through
the park, *Price* v. *Thompson,* 48 *Mo. 361 ;* see *Prudden* v. *Lindsley,* 1 *Stew. Eq.*
378, 2 *Stew. Eq. 615 ; Hunter* v. *Sandy Hill,* 6 *Hill 407 ; Belfast Academy* v.
*Salmond,* 11 *Me. 109 ;* or the laying of a railroad track on a street therein, *Pratt*
v. *Buffalo City R. R.,* 19 *Hun 30 ; Anderson* v. *Rochester R. R.,* 9 *How. Pr. 553 ;*
see *Talbott* v. *Richmond R. R. Co.,* 31 *Gratt. 685 ; Atchison and Nebraska R. R.*
*Co.* v. *Garside,* 10 *Kan. 552.*

In *Smith* v. *Heath,* 102 *Ill. 130,* a mortgagor, with the consent of the mort-

and sell and convey those lots for building purposes, and with that view had, when the bill was filed, caused a new map of its property to be made, showing the lands which constitute the park laid out in accordance with that design, and had, within a few days before the suit was commenced, by its officers, begun to cut down the trees on the park and open one or more of the streets laid down on the new map.

The defendant, by its answer, says that that map was made solely for the purpose of improving and beautifying the park, and to see how it could be improved as a park or pleasure-ground, and with no intention of carrying out the plan which it exhibited without the consent of all the lot-owners interested. It denies that it shows the land in the park laid out into building lots. It admits that the defendant has cut and cleared off some of the scrub pines and cedars in order to open a street or avenue extending First avenue through the park in a straight line but not the whole width of that avenue. It denies that this would injure the park, but claims that it would add to its beauty and to the value of the lots adjoining the park. It alleges as a reason for the extension that the roads in the park, which are tortuous, are dangerous, because of the very short curves therein,

---

gagees expressed in the mortgage, laid out the mortgaged premises into lots, fronting on a square (which square was covered by the mortgage), with no street between the lots and the square. The mortgagee afterwards released all these lots.—*Held*, that the mortgagee was estopped from foreclosing his mortgage as to the square.

In *Toronto* v. *McGill, 7 Grant's Ch. 462*, the owner of lands in Toronto laid them off into building lots, in 1836, and the surveyor marked on the plan a large square called "McGill's Square;" around this square lots were afterwards sold to different persons. In 1857, the owner of one of these lots, on behalf of himself and of all the other lot-owners, together with the city, filed a bill to enjoin the original proprietor from building upon or selling the square, alleging that it had been dedicated to the public; that the lot-owners were entitled to free access thereto and to have it remain open, and that a verbal agreement to that effect had been made at the time of the several sales. —*Held*, that what had been done did not amount to a dedication to the public; that the evidence was not sufficient to establish a grant of the easement claimed by the lot-owners, and that, if either claim had been sustained, there was a misjoinder of plaintiffs.

Morris v. Sea Girt Land Improvement Co.

in turning which it is said vehicles coming from opposite directions at the same time and meeting there are, because the drivers thereof are hidden from sight of each other by the shrubbery in the park, until they arrive at the curves, liable to collide with each other.

There appears to be no room to doubt that the defendant desires to destroy the park. Though its secretary (who told Mr. Morris, as the latter swears, that he was the chief officer of the company, and was the chief stockholder therein) testifies that it had no intention of opening First avenue through the park, and says that the cutting down of. trees was merely to enable a surveyor to run his lines, that the way so cleared was never made in the form of a road, and never was intended for a road, the answer states that the defendant did intend to open that avenue through the park, and that it cut down some of the scrub pines and cedars to clear the land for that purpose. Mr. Morris swears that some of the trees cut down were twelve and others ten inches in diameter, and were from twenty-five to thirty feet in height. Though the answer states that the new map was made merely to show how the park could be improved and beautified and did not show it laid off into building lots, the map which is

The complainant must allege and prove the injury to his own property, *Tifft* v. *Buffalo*, *65 Barb. 460;* *Christian Church* v. *Scholte, 2 Iowa 27;* *Howard* v. *Rogers, 4 Harris & Johns. 278;* see, further, *Baker* v. *Johnston, 21 Mich. 319;* *Leffler* v. *Burlington, 18 Iowa 361;* *Leftwich* v. *Plaquemin, 14 La. Ann. 152.*

A lot opposite a park, and with a street intervening, is not an *abutting* lot thereon, *Greene* v. *N. Y. Central R. R. Co., 12 Abb. N. C. 124;* *Holt* v. *Somerville, 127 Mass. 408;* see *Perrin* v. *New York Central R. R. Co., 40 Barb. 65, 36 N. Y. 120;* *Williams* v. *Boston Water Power Co., 134 Mass. 406.*

The town, in the first instance, is the proper party to proceed against encroachments, *Rowan* v. *Portland, 8 B. Mon. 232;* *Price* v. *Plainfield, 11 Vr. 608;* *Winona* v. *Huff, 11 Minn. 119;* *Mankato* v. *Willard, 13 Minn. 13;* *State* v. *Wilkinson, 2 Vt. 480;* *Watertown* v. *Cowen, 4 Paige 510;* *Morrison* v. *Hinkson, 87 Ill. 587;* see *Grogan* v. *Hayward, 4 Fed. Rep. 161;* *Vick* v. *Vicksburg, 1 How. (Miss.) 379;* *Logansport* v. *Dunn, 8 Ind. 378.*

If proceedings have been instituted by the public authorities, and are still pending, a lot-owner cannot intervene unless he shows an imminent, personal injury, *Parsons* v. *Trustees, 44 Ga. 529.*—REP.

produced shows the entire ground which constitutes the park laid off into building lots with streets and avenues, and the park is not so much as named thereon. The map is a large lithograph map entitled "Map of Sea Girt, situated in Monmouth county, New Jersey, Chas. F. Ingham, engineer, revised by Fred'k J. Anspach, engineer, 1877." Nor does there appear to be any ground for the statement that the extension of First avenue was necessary to avoid accidents. If it were, it would not warrant or justify the defendant's action. The roads are not so laid out in the park that they may not very readily be altered. Indeed, the secretary testifies that people take their own course in driving through the park, taking what road they please, that the drift roads there "run indiscriminately, and the width depends upon the freedom from timber." No attempt is made to show that, as the answer avers, the extension of First avenue through the park would beautify and improve the complainant's property. Manifestly it would be very injurious to it. The fact that no action has been taken by the company in its corporate capacity to make any change in the park is not enough to induce this court to withhold its prohibition. There is plenary evidence in the answer itself of an intention to do what is apprehended. The answer admits that the defendant undertook to open a highway across the park, and the evidence shows that the defendant contemplated destroying the park. There will be a perpetual injunction in accordance with the prayer of the bill. The complainant is entitled to costs.